**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| CHARLENE LYNETTE PEDERSON, | ) | No. CV 12-9418-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 6, 2012, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on December 4, 2012, and December 13, 2012.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 11, 2013, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on June 1, 1954.  [Administrative Record ("AR") at 94.]  She completed at least one year of college [AR at 179],[1] and has past relevant work experience as an executive assistant.  [AR at 179-80.]

On January 20, 2010, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been unable to work since May 1, 2008, due to deep vein thrombosis in her right leg.  [AR at 94-95, 148-49, 177-86.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 96-99, 102-07.]  Following a continuance to supplement the record [AR at 90-93], a hearing was held on May 16, 2011, at which time plaintiff appeared with counsel and testified on her own behalf.  A medical expert and a vocational expert also testified.  [AR at 67-89.]  On June 6, 2011, the ALJ determined that plaintiff was not disabled.  [AR at 22-29.]  On September 5, 2012, the Appeals Council denied plaintiff's request for review.  [AR at 1-5, 18.]  This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's

---

[1]    A disability report in the record reflects that plaintiff completed one year of college [AR at 179]; plaintiff testified at the administrative hearing that she completed two years of college.  [AR at 72.]

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

1   sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
2   and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to
3   perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a
4   prima facie case of disability is established.  The Commissioner then bears the burden of
5   establishing that the claimant is not disabled, because she can perform other substantial gainful
6   work available in the national economy.  The determination of this issue comprises the fifth and
7   final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828
8   n.5; Drouin, 966 F.2d at 1257.

9

10  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

11          In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial
12  gainful activity since her alleged disability onset date, May 1, 2008.  [AR at 24.][2]  At step two, the
13  ALJ concluded that plaintiff has the following severe impairments: chronic venous insufficiency
14  with history of recurrent deep venous thrombosis; hypertension; and obesity.  [Id.]  At step three,
15  the ALJ determined that plaintiff does not have an impairment or combination of impairments that
16  meets or medically equals any of the impairments in the Listing.  [AR at 25.]  The ALJ further
17  found that plaintiff retained the residual functional capacity ("RFC")[3] to perform "sedentary work"
18  as defined in 20 C.F.R. § 404.1567(a),[4] "including lifting up to 10 pounds occasionally and less
19  than 10 pounds frequently, standing and/or walking for a total of 2 hours in an 8-hour workday, and
20  sitting for a total of 6 hours in an 8-hour workday, but she must be allowed to alternate sitting and
21  standing at will; she can only occasionally push/pull with the lower extremities; she cannot climb

22  _____

23  [2]   The ALJ concluded that plaintiff meets the insured status requirements of the Social
24  Security Act through December 31, 2013.  [AR at 24.]

25  [3]   RFC is what a claimant can still do despite existing exertional and nonexertional
    limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26  [4]   "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting
27  or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined
    as one which involves sitting, a certain amount of walking and standing is often necessary in
28  carrying out job duties."  20 C.F.R. § 404.1567(a).

4

on ladders, ropes, or scaffolds, and can only occasionally perform all other postural activities; and she must avoid all exposure to hazards (e.g., unprotected heights, dangerous machinery)." [Id.] At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as an administrative assistant. [AR at 28.] In the alternative, the ALJ determined at step five that there are other jobs that exist in significant numbers in the national economy that plaintiff can perform. [Id.] Accordingly, the ALJ determined that plaintiff was not under a disability from May 1, 2008, through June 6, 2011, the date of the decision. [AR at 29.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that: (1) the ALJ's RFC determination is not supported by substantial evidence; (2) the ALJ improperly evaluated plaintiff's credibility; and (3) the ALJ erroneously concluded that plaintiff can return to her past relevant work or other work. [Joint Stipulation ("JS") at 3.]  As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

**A.    PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Bunnell v. Sullivan, 947 F.3d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for

truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Plaintiff made statements and gave testimony concerning the severity of her symptoms in a March 3, 2010, Exertional Questionnaire [AR at 187-89] and at her May 16, 2011, hearing before the ALJ.  [AR at 72-83.]  Plaintiff stated in her questionnaire that she "cannot sit or stand for extended periods of time without [her] leg going numb or hurting."  She also stated that her "leg and foot swell up[,] making it very painful to walk," and that she cannot walk more than two house-lengths without developing shortness of breath and dizziness. [AR at 187.]  She reported that she cannot lift more than ten pounds, does not carry anything but her purse, and drives to shop for food once a week.  [AR at 188.]  She also reported that making her bed takes about twenty minutes because she must "sit down in between," and that chores like vacuuming, folding clothes, and bringing groceries into the house "may take [her] two to three times longer than the average person" because of the pain in her leg and ankle. [AR at 188-89.]  Plaintiff testified at her hearing that she "[s]ometimes" makes meals, "[b]ut normally quick stuff that can be put in and put out because [she] can't stand for long periods of time." [AR at 75.]  When plaintiff was asked what prevents her from being able to perform a full-time job, she cited her inability to sit for more than twenty minutes at a time, her inability to stand for more than thirty minutes at a time, her need to "get up and walk so that [her] leg doesn't freeze up on [her]," and the fact that "[t]he doctors told [her she has] to keep [her] feet elevated." [AR at 76.]  Plaintiff testified that in her current

1  condition, she does not think she can perform her past job the way she did before.  [AR at 77.]

2  She stated that she takes medication for hypertension and deep vein thrombosis.[5]  [AR at 80.]

3  At step one of the two-step credibility analysis, the ALJ did not explicitly state that she found

4  that plaintiff's medically determinable impairments could reasonably be expected to cause the

5  alleged symptoms.  [See AR at 25-27.]  The ALJ nevertheless stated that "while the record

6  indicates [plaintiff] would have some impairment-related limitations, [plaintiff's] course of treatment

7  and clinical presentation do not support greater limitations than those found in this decision."  [AR

8  at 27.]  Thus, it appears that the ALJ implicitly found that plaintiff's medically determinable

9  impairments could reasonably be expected to produce *some* of the pain or other symptoms

10  plaintiff alleged, although not to the degree alleged.  At step two, as the record contains no

11  evidence of malingering by plaintiff,[6] the ALJ was required to offer "specific, clear and convincing

12  reasons" for rejecting plaintiff's subjective symptom testimony.  See Lingenfelter, 504 F.3d at

13  1036.  "General findings are insufficient; rather, the ALJ must identify what testimony is not

14  credible and what evidence undermines the claimant's complaints."  Reddick v. Chater, 157 F.3d

15  715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

16  Here, while not all of the reasons the ALJ gave for discounting plaintiff's subjective

17  symptom testimony are legally adequate, two of them are.  See Fair v. Bowen, 885 F.2d 597, 604

18  n.5 (9th Cir. 1989).  First, the ALJ found plaintiff less credible because she found that the medical

19  evidence "contrasts with the current claim of ongoing, disabling symptoms since the alleged onset

20  date."  [AR at 26.]  This characterization of the record by the ALJ is accurate, and this is a valid

21  reason to discount plaintiff's credibility.  The earliest evidence in the record of plaintiff's deep vein

22  thrombosis ("DVT") is on March 10, 2008, when plaintiff visited the Cedars-Sinai Medical Center

23  emergency room for DVT.  [AR at 234-35.]  An ultrasound of plaintiff's left lower extremity revealed

24

25  [5]  The hearing transcript reflects that the ALJ asked plaintiff whether she is "on medications for hypertension and [her] DBT."  [AR at 80.]  As the record does not reveal any impairment or

26  alleged impairment that could be abbreviated as "DBT," the Court assumes that this abbreviation in the ALJ's question referred to plaintiff's deep vein thrombosis -- "DVT."

27

28  [6]  The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

1  "an acute left lower extremity geniculate and peroneal vein DVT ... ."  [AR at 234.]  Plaintiff

2  returned to the same emergency room three days later -- on March 13, 2008 -- and was diagnosed

3  with DVT in her left leg.  [AR at 238-39.]  Sonographies of plaintiff's lower extremities on June 5,

4  2008, July 18, 2008, and August 25, 2008, revealed "[k]nown deep venous thrombosis," and a July

5  18, 2008, Cedars-Sinai Medical Center emergency room record noted that plaintiff "showed no

6  change in her duplex of the right leg with recanalization of clot."  [AR at 240-41, 251-53.]  After the

7  August 25, 2008, sonography, however, there are no medical records of plaintiff's DVT until

8  January 19, 2011 -- more than two years later.  [See AR at 263-94.]  Further, in the medical

9  records that exist between August 25, 2008, and January 19, 2011, studies performed on two

10  separate occasions were negative for or revealed no evidence of DVT.  Specifically, plaintiff visited

11  the Providence Holy Cross Medical Center ("PHCMC") emergency room on November 30, 2009,

12  for bilateral leg pain that had persisted for three days.  [AR at 264-65.]  The ultrasound of plaintiff's

13  lower extremities on that date was "negative for deep venous thrombosis."  [AR at 265, 271

14  (capitalizations omitted).]  On August 17, 2010, plaintiff visited the PHCMC emergency room again

15  -- the next treating note in the record after her November 30, 2009, visit to that emergency room --

16  complaining of pain in her right leg and foot.  [AR at 294-99, 304-06.]  A Doppler study revealed

17  "no evidence of deep venous thrombosis to the right lower extremity," and the attending physician

18  -- Dr. Eric K. El-Tobgy -- stated that plaintiff "had no evidence of deep venous thrombosis" and that

19  he "felt it was unlikely [she] ha[d] an occult right lower extremity deep venous thrombosis."  [AR

20  at 305.]  Plaintiff did not test positive for deep vein thrombosis again until January 19, 2011, when

21  she visited the UCLA Medical Center emergency room and an ultrasound revealed DVT in her

22  right leg.  [AR at 319-22, 335.]  The last treatment record for plaintiff's DVT in the Administrative

23  Record is dated February 23, 2011, when a UCLA physician ordered compression stockings for

24  her.  [AR at 313.]  That the medical evidence reflects positive diagnoses and/or testing for DVT

25  from March, 2008, to August, 2008, but then not again until January, 2011, and then only for two

26  months, is substantial evidence that the medical evidence "contrasts with [plaintiff's] claim of

27

28

1  *ongoing*, disabling symptoms since the alleged onset date." [AR at 26 (emphasis added).]  Thus,

2  this was a legally adequate reason to discredit plaintiff's subjective symptom testimony.[7]

3  Second, the ALJ discounted plaintiff's credibility because plaintiff "has consistently denied

4  the use of any pain medication."  [AR at 27.]  This observation by the ALJ is supported by the

5  record.  The March 13, 2008, Cedars-Sinai Medical Center emergency treatment record reflects

6  that plaintiff sought treatment on that date for pain in her left calf that started "six days prior to

7  admission." [AR at 238.]  Nevertheless, that note states that "[s]he has Darvocet at home that she

8  has not been taking" and that "[s]he reports that she does not want to take any unnecessary

9  medications." [Id.]  Further, plaintiff's August 17, 2010, emergency room treatment record states

10  that she sought treatment on that date because "her right leg fe[lt] tight and painful" such that "she

11  was unable to ambulate [two days earlier] secondary to pain," but she at that time "denie[d] taking

12  any pain medications."  [AR at 304.]  Finally, in one medication list submitted in support of her

13  application, plaintiff stated that she was only taking medication for high blood pressure [AR at 213],

14  and in a second medication list, she stated that she was only taking medication for her blood clots

15  and high blood pressure.  [AR at 218.]  She did not state on either of those medication lists that

16  she was taking any medication for pain.[8]  That plaintiff consistently denied any use of pain

17  medications (or that she at most took only aspirin for her pain) supports the ALJ's finding that

18  plaintiff's allegations of disabling symptoms were less than fully credible.  See Flaten v. Sec'y of

19  Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995) (that the plaintiff managed her back

20

21

22  _____

23  [7]  Even if this reason is construed as a lack of medical evidence supporting plaintiff's
allegations concerning the severity of her subjective symptoms, it was permissible for the ALJ to

24  rely on this reason because, as discussed infra, she provided another legally adequate reason to
discredit plaintiff's testimony.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

25  [8]  The Court notes that a disability report submitted in support of plaintiff's application for

26  benefits on May 19, 2010, does state that she was then taking aspirin for her pain.  [AR at 204.]
Nevertheless, the Court finds this reference offset by the fact that a March 10, 2010, internal

27  medicine evaluation states that plaintiff "was initially on Coumadin [for her deep vein thrombosis],
but then reports that she has convinced her doctor to continue taking aspirin for this."  [AR at 284-

28  88.]

1  pain without medication for seven years supported the ALJ's decision to discredit her testimony

2  and find that her impairment during that period had not rendered her disabled).

3      Because the ALJ provided clear and convincing reasons to discount plaintiff's allegations

4  of pain and other subjective symptoms, the credibility determination must be upheld.  See Green,

5  803 F.2d at 532.  Remand is not warranted on this issue.

6

7  **B.    RFC DETERMINATION**

8      Plaintiff contends that the ALJ's RFC determination is not supported by substantial

9  evidence because the determination did not include plaintiff's "need to elevate her leg while

10  sitting."  [JS at 3-5, 7.]

11      In determining a claimant's disability status, an ALJ has the responsibility to determine the

12  claimant's RFC after considering "all of the relevant medical and other evidence" in the record.

13  20 C.F.R. §§ 404.1545(a)(3), 404.1546(c).  "Thus, an RFC that fails to take into account a

14  claimant's limitations is defective."  Valentine v. Comm'r of Social Sec. Admin., 574 F.3d 685, 690

15  (9th Cir. 2009).

16      As noted supra, during plaintiff's August 17, 2010, visit to the PHCMC emergency room,

17  Dr. El-Tobgy stated that plaintiff then had "no evidence of deep venous thrombosis" and that he

18  "felt it was unlikely [she] ha[d] an occult right lower extremity deep venous thrombosis."

19  Nevertheless, he recommended that plaintiff "elevate her leg as much as possible."  [AR at 305.]

20      At the administrative hearing, the medical expert, Dr. Thomas Maxwell, testified that he

21  personally "[thought] elevation of the leg would be therapeutic" for plaintiff.  [AR at 83, 86-87.]  He

22  elaborated that "[t]he frequency is open to question, and based on the record [he] reviewed [he

23  thought] there would be a way to navigate that throughout the workday."  [AR at 87.]  Later, when

24  the ALJ asked Dr. Maxwell about this limitation again, the doctor testified that "the degree of

25  elevation of the leg[] and the frequency" is "somewhat open to debate."  [AR at 88.]  The ALJ then

26  asked Dr. Maxwell whether he thought that the ability to elevate the leg on a little stool for fifteen

27  minutes every two hours would "satisfy the condition that's been described," to which Dr. Maxwell

28

1  answered, "Based []on [the] record that I reviewed, yes."  [Id.]  The ALJ's RFC determination for

2  plaintiff does not include any condition concerning leg elevation.  [See AR at 25.]

3        Plaintiff contends that the ALJ committed reversible error by failing to incorporate Dr. El-

4  Tobgy's August 17, 2010, recommendation that she "elevate her leg as much as possible" into the

5  RFC determination.  This contention is without merit.  First, the record does not reflect that this

6  recommendation from Dr. El-Tobgy related to plaintiff's deep vein thrombosis.  Instead, plaintiff's

7  Doppler study on that date revealed "no evidence of deep venous thrombosis to the right lower

8  extremity," and Dr. El-Tobgy stated that he "felt it was unlikely [she] ha[d] an occult right lower

9  extremity deep venous thrombosis."  Second, the doctor's recommendation was made in the

10  context of a single visit to the emergency room for acute pain, and thus the Court agrees with

11  defendant that this recommendation does not clearly amount to an opinion that plaintiff "could only

12  perform work that would permit elevation of her legs" [JS at 6], i.e., an opinion of a more long-term

13  nature.  Third, the record does not reflect that Dr. El-Tobgy ever treated plaintiff other than at her

14  August 17, 2010, emergency room visit [see, e.g., AR at 263-64, 274-75 (plaintiff was treated by

15  Dr. Jay Brown during a June 19, 2009, visit to the PHCMC emergency room, and by Dr. Alexander

16  Zlidenny during her November 30, 2009, visit to the PHCMC emergency room)], and thus while

17  plaintiff in the Joint Stipulation characterizes Dr. El-Tobgy as her "treating physician" [JS at 5], the

18  ALJ was permitted to consider the number of times Dr. El-Tobgy treated plaintiff and the nature

19  of that treatment in deciding whether to incorporate his recommendation into plaintiff's RFC.  See

20  20 C.F.R. § 404.1527(c)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on

21  length of the treatment relationship, frequency of visits, and nature and extent of treatment

22  received).  For these reasons, the ALJ's decision to exclude Dr. El-Tobgy's recommendation from

23  plaintiff's RFC determination was not improper.

24        Next, plaintiff points out that she testified concerning leg elevation at her administrative

25  hearing, stating, "The doctors told me I have to keep my feet elevated."  [AR at 76; JS at 7.]  To

26  the extent plaintiff asserts that any doctor other than Dr. El-Tobgy advised her to keep her feet

27  and/or legs elevated, she does not identify evidence of such a recommendation in the record, nor

28  is the Court aware of any evidence of this kind.

1    Finally, it appears that plaintiff contends it was improper for the ALJ to rely on the medical

2    expert's testimony because that testimony was "inconsistent with [Dr. El-Tobgy's] notation for

3    [plaintiff] to elevate her leg as much as possible." [JS at 7.]  For the same reason it was not

4    improper for the ALJ to omit Dr. El-Tobgy's recommendation from the RFC determination, this

5    contention fails.  Further, Dr. Maxwell testified that he "[p]ersonally" thought that "elevation of the

6    leg would be therapeutic" for plaintiff's condition, and later added that based on his review of the

7    record, plaintiff's ability to elevate her leg on a small stool for fifteen minutes every two hours

8    would "satisfy the condition that's been described."    Accordingly, while Dr. Maxwell's

9    recommendation differed from that of Dr. El-Tobgy, Dr. Maxwell's recommendation was based on

10   his own personal opinion after reviewing plaintiff's entire record, and did not purport to summarize

11   Dr. El-Tobgy's recommendation.  Thus, plaintiff's argument that the ALJ improperly relied on the

12   recommendation of Dr. Maxwell over and against that of Dr. El-Tobgy fails to establish any error

13   on the part of the ALJ.

14   Plaintiff has not demonstrated that the ALJ's RFC determination is unsupported by

15   substantial evidence, and thus the Court must defer to the Commissioner on this issue.  Moncada,

16   60 F.3d at 523.

17

18   **C.    PAST RELEVANT WORK**

19   Plaintiff argues that the ALJ erroneously determined that plaintiff can perform her past

20   relevant work because: (1) the vocational expert ("VE") testified that if an individual had to elevate

21   her leg for fifteen minutes each hour during the workday, there are no jobs such an individual

22   could perform; (2) the ALJ did not inquire into whether plaintiff's past job "was actually a

23   combination of jobs"; and (3) the ALJ did not inquire into whether plaintiff's past job required a

24   higher level of exertion than that in the Dictionary of Occupational Titles description.  [JS at 16.]

25   At step four, the ALJ must determine whether plaintiff's RFC allows her to return to her past

26   relevant work.  Lester, 81 F.3d at 828 n.5; 20 C.F.R. § 404.1520(a)(4)(iv).  Plaintiff has the burden

27   of establishing that she cannot "return to [her] former *type* of work and not just to [her] former job."

28   Villa v. Heckler, 797 F.2d 794, 798 (9th Cir.1986) (emphasis in original); see also Terry v. Sullivan,

903 F.3d 1273, 1275 (9th Cir. 1990) (citing id.) ("The burden of establishing disability is initially on the claimant, who must prove that she is unable to return to her former type of work.").  However, the ALJ must make findings of fact regarding plaintiff's RFC, the physical and mental demands of plaintiff's past work, and whether plaintiff can return to her past relevant work "either as actually performed or as generally performed in the national economy." Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001); Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002).  A claimant is typically the primary source for determining how a job was actually performed.  Social Security Ruling[9] 82-62.  But when determining how a job is generally performed, the ALJ can rely on the descriptions given by the Dictionary of Occupational Titles ("DOT") or a vocational expert.  See SSR 82-62; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

The DOT raises a presumption as to job classification requirements.  See Johnson, 60 F.3d at 1435; see also Pinto, 249 F.3d at 845-46 ("the best source for how a job is generally performed is usually the [DOT]") (internal citations omitted).  A claimant is entitled to challenge an ALJ's classification of her past relevant work under the DOT, however.  See Villa, 797 F.2d at 798; see also, e.g., Goodenow-Boatsman v. Apfel, 2001 WL 253200, at *7 (N.D. Cal. Feb. 27, 2001) ("plaintiff may challenge the ALJ's classification of her past relevant work according to the DOT").  She "may overcome the presumption that the Dictionary's entry for a given job title applies to [her] by demonstrating that the duties in [her] particular line of work were not those envisaged by the drafters of the category." Villa, 797 F.2d at 798.  Alternatively, the claimant may "undertak[e] the burdensome task" of showing the DOT inaccurately describes the exertional demands of the type of work in question.  See id.  If the ALJ "incorrectly categorize[s] [a claimant's] occupation under [a DOT] job title ..., then 'the description applicable to that category is irrelevant to the determination of the exertional capacities required in [her] former occupation.'" Villa, 797 F.2d at 798 (quoting Tingle v. Heckler, 627 F.Supp. 544, 545 (S.D. Miss. 1986)).

---

[9]   Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

First, plaintiff asserts that the ALJ's step four determination is improper because it does not account for plaintiff's need to elevate her leg for fifteen minutes every hour. At the administrative hearing, plaintiff's counsel asked the VE to identify a job existing in significant numbers in the national economy that an individual could perform if she could sit for no more than two hours at a time and had to elevate her leg at chest level for fifteen minutes each hour. [AR at 86.] In response, the VE testified: "based on my experience, that would not normally be tolerated in a work setting." [Id.] Plaintiff's reliance on this testimony to contend that she must elevate her leg for fifteen minutes every hour, and can only perform jobs that would allow for such an accommodation, essentially reiterates her argument that the ALJ erroneously determined her RFC (see supra, Section B). For the reasons set forth above, however, Dr. El-Tobgy's isolated emergency room recommendation that plaintiff "elevate her leg as much as possible" cannot fairly be construed as a permanent restriction requiring plaintiff to elevate her leg at chest level for fifteen minutes every hour when working. In addition, Dr. Maxwell did not testify that plaintiff must elevate her leg at chest level for fifteen minutes every hour, but stated that based on his review of the record, plaintiff's ability to elevate her leg on a small stool for fifteen minutes every two hours would satisfy her therapeutic need to elevate her leg. Finally, plaintiff fails to point to any evidence in the record that any doctor recommended that she elevate her leg at chest level for fifteen minutes every hour. Accordingly, the ALJ's decision not to consider the impact of such a limitation on plaintiff's ability to perform her past work does not render the step four determination improper.

Plaintiff's next step four contention is that the ALJ did not inquire into "whether her job was actually a combination of jobs." [JS at 16.] In a disability report contained in the record, plaintiff described the duties of her past job as an executive assistant as: performing data entry, making travel arrangements, planning events and meetings, and ordering office supplies. [AR at 179-80.] At the administrative hearing, she testified that her job involved "mainly assisting executives, doing anything and everything ... administrative to keep them focused on their job." She added: "I did the expense reports, planning, events, lunches, scheduling appointments, just anything and everything having to do with organization of their time and whatever else was needed." [AR at 74.]

The job of administrative assistant described at DOT No. 169.167-010 -- under which the VE classified plaintiff's past work and upon which the ALJ relied to make her step four determination [AR at 28, 84] -- is a sedentary job that includes the following duties, among others:

> Aids executive in staff capacity by coordinating office services, such as personnel, budget preparation and control, housekeeping, records control, and special management studies[.] ... Coordinates collection and preparation of operating reports, such as time-and-attendance records, terminations, new hires, transfers, budget expenditures, and statistical records of performance data. Prepares reports including conclusions and recommendations for solution of administrative problems. Reviews and answers correspondence. May assist in preparation of budget needs and annual reports of organization. May interview job applicants, conduct orientation of new employees, and plan training programs. May direct services, such as maintenance, repair, supplies, mail, and files. May compile, store, and retrieve management data, using computer.

DOT No. 169.167-010.

Substantial evidence supports the ALJ's reliance on the VE's testimony to classify plaintiff's past relevant work as that of an administrative assistant described in DOT No. 169.167-010. First, plaintiff stated that she prepared expense reports, and the DOT job of administrative assistant includes the duty of "[c]oordinat[ing] collection and preparation of operating reports, such as ... budget expenditures." Second, plaintiff also stated that her past job involved the ordering of office supplies, and DOT No. 169.167-010 states that an administrative assistant "[m]ay direct services, such as ... supplies." Third, plaintiff performed data entry in her job as an executive assistant, and DOT No. 169.167-010 states that an administrative assistant "[m]ay compile [and] store ... management data[] using computer." Fourth, plaintiff stated that she scheduled appointments and planned events, which would necessarily involve the duty of "[r]eview[ing] and answer[ing] correspondence" found in DOT No. 169.167-010. Finally, plaintiff testified that her job involved "doing anything and everything ... administrative to keep [executive] focused on their job," which is similar to the following description in DOT No. 169.167-010: "Aids executive in staff capacity by coordinating office services, such as personnel, budget preparation and control, housekeeping, records control, and special management studies." The DOT job of administrative assistant significantly mirrors the duties of plaintiff's former work.

1    Further, although plaintiff contends that the ALJ erred by failing to inquire into "whether her

2    job was actually a combination of jobs," plaintiff fails to identify what other job, in combination with

3    the job of administrative assistant, more accurately describes plaintiff's past job than the job of

4    administrative assistant alone.   Her conclusory assertion is insufficient to overcome the

5    presumption that the job of administrative assistant applies to her case.  See Villa, 797 F.2d at

6    798.

7    Finally, plaintiff argues at step four that the ALJ "did not conduct an adequate query as to

8    what duties [plaintiff] was performing at a higher level of exertion."  She asserts that if "one of the

9    parts of her job required greater exertion" than the other parts of the job, then it would be

10   "improper for the lesser contained job to be used as the determining job." [JS at 16.]  In support,

11   plaintiff quotes Valencia v. Heckler, 751 F.2d 1082, 1086 (9th Cir. 1985), stating that "[t]o classify

12   an applicant's 'past relevant work' according to the least demanding function of the claimant's past

13   occupations is contrary to the letter and spirit of the Social Security Act." [JS at 16-17 (internal

14   quotations omitted).]

15   In Valencia, the ALJ classified the plaintiff's past relevant work as a kitchen helper and

16   agricultural laborer as medium work.  Valencia, 751 F.2d at 1086.  The Appeals Council implicitly

17   found, however, that because the plaintiff's past job of an agricultural laborer involved one task --

18   sorting tomatoes -- that was light work, the plaintiff had "past relevant work" that could be

19   classified as light work.  Id. at 1085.  The Appeals Council then concluded that the plaintiff could

20   perform her "past relevant work," as her RFC did not preclude light work.  Id. at 1086.  The Ninth

21   Circuit reversed, finding that it was erroneous for the Commissioner to rely on only *one task*

22   associated with plaintiff's past job as an agricultural laborer to conclude that she could perform her

23   "past relevant work."  Id. at 1087.  The plaintiff's past relevant work as actually performed versus

24   as generally performed was not at issue in Valencia.  See id. at 1086-87.

25   /

26   /

27   /

28   /

1    Here, based on plaintiff's description of the duties and exertional demands of her past job,[10]

2    the VE testified that plaintiff's past relevant work was properly classified as an administrative

3    assistant (DOT No. 169.167-010).  [AR at 84.]  The VE further testified that the job of an

4    administrative assistant is characterized as sedentary by the DOT, but was "light[11] as [plaintiff]

5    actually performed it."  [Id. (footnote added).]  The ALJ relied on the VE's testimony to conclude

6    that plaintiff can perform her past relevant work as an administrative assistant *as it is generally*

7    *performed*.  [AR at 28.]

8        Plaintiff's reliance on Valencia is unavailing.  In Valencia, the Ninth Circuit held that the

9    Appeals Council erroneously determined that because the plaintiff's past job involved one light

10   task, the plaintiff had "past relevant work" that could be classified as light (even though other tasks

11   required of that job were of a medium exertional level).  Here, the ALJ's conclusion that plaintiff

12   can perform the job of administrative assistant -- a sedentary job -- is not based on a

13   determination that one task in that job is sedentary.  Rather, the DOT -- which is "the best source

14   for how a job is generally performed" (Pinto, 249 F.3d at 845-46) -- classifies the job of

15   administrative assistant as sedentary, and that classification is therefore presumed to be accurate.

16   See Johnson, 60 F.3d at 1435.  Plaintiff points to no evidence that any of the tasks described in

17   the job of administrative assistant (DOT No. 169.167-010) requires a greater exertional level than

18   the sedentary exertional level, and thus she has not rebutted the presumption that DOT No.

19   169.167-010 accurately describes the exertional demands of the job of administrative assistant.

20   Neither has she shown that she cannot perform this job as it is generally performed -- i.e., at the

21   sedentary exertional level.

22   /

23

24   [10]  Plaintiff did not testify at the administrative hearing about the exertional demands of her
25   past job, but stated in a disability report that her job did not require her to lift more than 20 pounds
     at a time.  [AR at 180.]

26   [11]  20 C.F.R. § 404.1567(b) defines "light work" as work involving "lifting no more than 20
27   pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and
     requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and
28   pulling of arm or leg controls."

Finally, to the extent plaintiff relies on the fact that she performed her past job of an administrative assistant at the light level to assert that this job, as *generally* performed, requires light work, that assertion also fails.  Indeed, the step four determination that a plaintiff can perform her past relevant work "either as actually performed or as generally performed in the national economy" (Pinto, 249 F.3d at 844-45) assumes that there may be differences between how a job is generally performed and how it is actually performed in a specific work environment.

Plaintiff has not met her burden of establishing that DOT No. 169.167-010 is an inaccurate classification of her past job as an administrative assistant, and the ALJ's step four determination is entitled to deference.  See Moncada, 60 F.3d at 523.[12]

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 1, 2013

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[12]   In light of the Court's determination that the ALJ's step four determination is supported by substantial evidence, there is no need to reach plaintiff's argument that the ALJ erred in making her step five finding -- that there are also other jobs that exist in significant numbers in the national economy that plaintiff can perform.  [See JS at 17, 21.]